## GENERAL EXCHANGE INSURANCE CO. v ELIZER ·

Ohio Appeals, 1st Dist, Butler Co.

No. 793. Decided Nov. 12, 1940.

Casper & Casper, for appellant.
C. W. Elliott, Middletown, for appellee.

## OPINION

By ROSS, J.

Appeal on questions of law from a judgment of the Court of Common Pleas of Butler County, wherein judgment was rendered, pursuant to a general verdict in favor of the defendant.

It appears from the record that two automobiles collided at the intersection of Grove Street and Michigan Avenue, in the City of Middletown about 5 P. M., on April 15, 1939. The vehicle proceeding westwardly over Michigan Avenue was driven by Marvin Carpenter, son of the owner of this vehicle, who sat with his son in the front seat. The defendant was driving his own automobile northwardly on Grove Street.

The plaintiff is the insurer of the automobile owned by Carpenter. It became subrogated to the rights of Carpenter through the provisions of a policy of insurance, and the payment of the loss incurred by Carpenter, whose automobile was damaged in the collision.

The plaintiff asserts that prejudicial error intervened in the trial of the case by reason of the action of the trial court in refusing a challenge for cause of two jurors, the plaintiff having exhausted all of its peremptory challenges.

Upon the voir dire examination of the prospective jurors, from the record it appears that the following took place.

"Dorothy H. Alston, called as a prospective juror, answered as follows:

By Mr. Casper.

Q. What is your address?
A. 126 South "D" Street, Hamilton.
Q. And your occupation?
A. Housewife.
Q. And what does your husband do?
A. He is in the general insurance and real estate business in Hamilton.
Q. What kind of insurance does he sell?
A. Automobile, fire, windstorm.
Q. What companies does he represent in the automobile field—casualty field?
A. U. S. Fidelity & Guaranty, Mercer, I don't recall all of them.
Q. He represents the Mercer Casualty Co.?
A. Yes, at least he used to, I couldn't say now.
Q. Does he represent the Celina too?
A. I think he does, or has.
Q. We submit a challenge for cause, because one of the jurors, prospective jurors, has stated that her husband sold insurance which included the Mercer Casualty Company and the Celina, which counsel for plaintiff states is the real party in interest as far as this defendant is concerned, and we move that she be excused for cause.

By the Court: Overruled.
Mr. Casper: Exception.
Mr. Elliott: No questions."

Practically the same situation prevailed in the case of a Mrs. Samuels.

Only by the statement of counsel for the plaintiff embodying a conclusion of law as well as of fact does it appear that the Celina Insurance Company was the "real party in interest". How such insurance company qualified in this respect does not appear. It is stated in the brief of counsel for the plaintiff that this case is peculiarly important in presenting the question, whether the wife of an agent for an insurance company which has written a policy covering liability of a party can be challenged for cause. The record in no place presents such an issue. The statute relied upon is §11419-51 GC. The pertinent part thereof is:

"The following shall be good causes for challenge to any person called as a juror for the trial of any cause: * * *
5. That he is the employer, employe, or the spouse, parent, son or daughter of the employer or employe, counselor, agent, steward or attorney of either party."

It is the apparent claim of counsel that the jurors sought to be removed were wives of agents for an insurance company, carrying liability by reason of a policy held by a party.

It is the claim also that the language of §11419-51 GC, noted, permits challenge of the "spouse" of an "agent". The construction claimed would permit challenge of the spouse, but not of the agent, the spouse of an attorney, but not the attorney. The statute does not include both. The language evidently limits the application of the statute to a spouse of an "employer" or "employe". Neither the statute nor the common law sustains the claim for a challenge for cause under the state of the record.

So viewing the matter, it becomes unnecessary to consider whether or not if a challenge for cause had existed, error prejudicial to the plaintiff would

have intervened. It is to be noted, however, in this connection, that the verdict in this case was unanimous.

The plaintiff's insured was the father of the driver of the automobile. He sat next to his son on the front seat of the car.

The court, at the request of the defendant, gave the following special charge:

"If you find that after observing that Mr. Elizer's car was crossing the intersection, the driver of Mr. Carpenter's car failed to exercise ordinary care to avoid the collision, and that such failure proximately contributed even in the slightest degree to cause the collision, you should return a verdict in favor of the defendant, whether you find that Mr. Elizer was negligent in approaching, entering, and crossing the intersection or not."

The giving of this charge can only be justified if the plaintiff's insured was responsible for the negligence or contributory negligence of his son, the driver of the car, for the charge imputes any negligence of the son to the father. The charge does not state there is a rebuttable presumption of fact to this effect. It takes for granted that the father was, by the existing circumstances, responsible for the son's acts.

The court in its general charge specifically stated that the:

"plaintiff in this case cannot recover if the driver of the Carpenter car was guilty of negligence proximately causing the damage; or in other words, if the operator of the Carpenter car was guilty of what is called contributory negligence; that is, if by his failure to exercise ordinary care and caution under the circumstances, he directly contributed to produce the damage which was suffered."

The court also refused a special charge of the plaintiff which presented the same issue in a slightly different way:

"The court tells you that if you find that Clyde Carpenter was free of any negligence directly contributing to the accident, and if you should further find that Marvin Carpenter was not acting as his agent or under his direction in driving the automobile at the time of the accident, and if you should also find that the defendant, Elizer, was negligent and that such negligence was a proximate cause of the collision and damage, if any, to the automobile of Clyde Carpenter and that the plaintiff has been subrogated to the rights and claims of Clyde Carpenter against Elizer, then your verdict must be for the plaintiff.

"And the court tells you that this will be your verdict, even though you may also find Marvin Carpenter, the driver of Clyde Carpenter's automobile, to have also been negligent."

In **Riley v Speraw, 42 Oh Ap 207,** Judge Sherick has carefully reviewed the Ohio authorities pertinent to this question. The conclusion of the Court of Appeals of the Fifth District is, that, under circumstances similar to that in the case at bar, there is a rebuttable presumption of fact.

We agree that such is the proper rule.

The defendant claims, however, that there was no evidence in the case, in any way tending to rebut the presumption of control on the part of the elder Carpenter. We find this contention to be justified by the record. The elder Carpenter testified:

"Q. Notwithstanding you claimed the boy was competent you gave distinct attention to every move he made?
A. I did, yes.
Q. You want the jury to understand the car was driving along there and you were giving distinct attention to every move your son made as he drove the car. is that it?
A. He had his hands on the wheel—
Q. Whether you did or not—did you or did you not at that time direct your attention specifically to everything your son did in the matter of driving. the car?

A. I would say yes.

Q. And in the performance of that function you had your eyes on the steering wheel?

A. I had my eyes on the car.

Q. Your own car?

A. Yes, also the other car as we approached.

Q. Then you didn't have your eyes on the wheel?

Mr. Casper: Object.

A. I can't answer that question, I don't know.

Q. I want to ask you whether when you testified before the justice of the Peace you were not asked this question, 'And you were concerning yourself about every move that he made?' (meaning your son)—and if you did not then answer that question: 'Yes sir, I was at that time'—did you make that answer?

Mr. Casper: Object.

By the Court: Overruled.

A. I believe I did at that time, I was interested in the car.

Q. And immediately following that you were asked this question, 'And had been all the way along the trip?' And did you answer that 'Yes sir'?

A. I think I did answer that yes.

Q. And then the very next question was: 'You always did when he was driving?' And if you did not answer, 'I always did, I had my eyes on the wheel'—did you make that answer to that question?

Mr. Casper: Object.

By the Court: Overruled.

A. I might have, yes, because I always did."

The action of the court upon the charges was, therefore, proper.

It is asserted by the plaintiff that the verdict is against the weight of the evidence.

The parties responsible for the operation of the respective vehicles in this case enter this litigation with respective presumptions of lawful operation in favor of each.

"It is generally declared that negligence is never presumed against either party. The mere fact that an injury has been sustained does not give rise to a presumption or inference of negligence. There is no presumption of negligence as against either party to an accident except such as arises upon the facts proved." 29 O. Jur. 622, et seq.

"1. There is no presumption of negligence, except such as arises from facts proven. There is a presumption of freedom from negligence, and such presumption stands until rebutted by evidence." Martin, Jr. v Heintz, 126 Oh St 227, par. 1, syllabus.

The Carpenter car, proceeding westwardly on Michigan Avenue, had the right of way against the defendant's car, proceeding northwardly on Grove Street, because the latter car was approaching the Carpenter car from its left.

There is absolutely no substantial evidence that the Carpenter car was being operated in an unlawful manner.

The defendant testified that from a point approximately at the intersection of the curb lines he could see seventy-five feet east on Michigan Avenue, and that he saw no vehicle then approaching and it is inferred because a collision occurred that the defendant must have covered more than seventy-five feet while the defendant was proceeding at a speed of eighteen to twenty-five miles an hour from the curb of Michigan Avenue to approximately the center and point of collision. This speculation is not sufficient to overcome the presumption of lawfulness possessed by the driver of the Carpenter car, which had the right of way.

It must be remembered that right of way deals with the intersection of paths not streets.

"Excepting when otherwise hereinafter provided the operator of a vehicle shall yield the right of way at the intersection of its path and the path of another vehicle to the vehicle ap-

proaching from the right." §6310-28a GC.

" 'Right of way' means the right of a vehicle to proceed uninterruptedly in a lawful manner in the direction in which it is moving in preference to another vehicle approaching from a different direction." §6310-28 GC.

"Vehicles shall keep to the right side of the center line or center line of the road or highway except as otherwise provided herein." §6310-17 GC.

"The traffic sections were enacted for the protection of the traveling public and precisely define the duties of vehicles approaching main thoroughfares and highway intersections. They are designed to be obeyed, so as to avoid those dangers inherent in converging streets and highways and to avoid racing to reach the intersection first." Morris v Bloomgreen, 127 Oh St 147, par. 4, syllabus.

There seems to be an impression among some of those who operate automobiles that if upon approaching an intersection, when the view in the direction of vehicles possessing the right of way is limited by obstructions at or near the corner of the streets, that the vehicle with the subservient right may proceed into the intersection without regard to what may be observed after entering same, and before crossing the path of the dominant vehicle. It is this misconception of the practical rule that causes many collisions. It is to be borne in mind that the subservient vehicle has the right ▮▮▮ of way, proceeding in a lawful manner and exercising ordinary care, as against vehicles approaching from its left. This permits such subservient vehicle. in this case the defendant's car, to proceed into the intersection where a view of the street to the right may be obtained from a point where such view will be of some value. If then a car is observed approaching from the right, its path must not be obstructed. If it is proceeding at a rapid rate, certain-

ly it is foolhardy to rely upon its loss of right of way by reason. of unlawful operation. If the car coming from the right is approaching in a lawful manner, then its right to proceed uninterruptedly must be respected.

There was evidence that the windows in the defendant's car were obscured by mist upon the glass. This may have accounted for the collision.

We are not unmindful of the last paragraph of the syllabus in Morris v Bloomgreen. But there is no evidence that the driver of the car possessing the dominant right could have avoided, the collision after becoming ▮▮▮ aware that the defendant did not intend to yield the right of way. The evidence indicates that the Carpenters thought the defendant intended to stop and then changed his mind and came on. It was then too late to avoid the collision.

We find that the verdict is contrary to the weight of the evidence in favor of the plaintiff's right to recover and, for this reason alone, the judgment of the trial court is reversed and the cause remanded for a new trial.

HAMILTON, PJ. & MATTHEWS, J., concur.